IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALFRED SNOWDEN, et al., *

Plaintiffs, *

v. * Civil Action No. GLR-20-2913

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, et al., *

Defendants. *

***

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant United States Department of Veterans Affairs' ("DVA") Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 11). The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons discussed below, the Court will grant the Motion, which it construes as a motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

Plaintiff Alfred Snowden ("Alfred") is a veteran. (Compl. ¶ 11, ECF No. 1). Plaintiff Judith Snowden ("Judith") (together with Alfred, the "Snowdens") is his wife. (Aff. Judith Snowden ["Judith Aff."] ¶ 1, ECF No. 16-6). Following a stroke in 2006, Alfred suffered right side paralysis, aphasia, and other ailments. (Id.). As a result, Alfred is "completely dependent" and requires "a home caregiver to perform the activities of daily living and transfers from his hospital bed to his wheelchair." (Id.). Alfred received services through

the VA's Home Health Aide Program (the "HHAP")[1] from June 2011 until May 2019. (Decl. Crystal Taylor ["Taylor Decl."] ¶ 7, ECF No. 11-2). On May 8, 2019, Crystal Taylor, Program Director for Home and Community Based Services for DVA's Perry Point, Maryland location, sent Alfred a letter informing him that he would be discharged from the HHAP. (Compl. ¶ 14; May 8, 2019 Letter from Taylor ["May 8 Letter"] at 2,[2] ECF No. 16-1). Taylor explained in the letter that that Alfred had "exhausted all available [HHAP] agencies in [his] area," which she later explained occurred because Alfred's "family members sent home health aides away from his home or the home health aides left his home due to the distress caused by [Alfred's] family." (May 8 Letter at 2; Taylor Decl. ¶¶ 9–10).[3]

Alfred appealed the determination on January 27, 2020, and on February 21, 2020, received notice that DVA had denied his appeal. (Compl. ¶ 14; Feb. 21, 2020 Letter to Snowden ["Feb. 21 Letter"] at 2, ECF No. 1-2). In the denial, DVA mistakenly stated that Alfred "[did] not qualify for the Caregiver Support Program," rather than the HHAP, the program through which Alfred actually received services. (Feb. 21 Letter at 2). The letter explained that DVA had determined that "there are currently no approved agencies in your area available to provide home care." (Id.).

[1] Plaintiffs allege that Alfred received services through the DVA's Caregiver Support Program, not the HHAP, and "remained eligible throughout." (Compl. ¶ 12). This mistaken understanding regarding the specific program through which Alfred receives services appears to have resulted from an incorrect reference to the Caregiver Support Program in a letter Plaintiffs received from the DVA in 2020.

[2] Citations to exhibit page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[3] Plaintiff Judith Snowden explains that the agencies the DVA assigned to Alfred's care were frequently deficient. (Judith Aff. ¶¶ 5–12).

Alfred timely appealed the decision to discontinue his services to the DVA's Capitol Health Care Network, Veterans Integrated Service Network 5 ("VISN 5")[4] on April 17, 2020. (Compl. ¶¶ 15–16; VISN Appeal at 2, 8, ECF No. 1-3). Alfred referenced his eligibility for the Caregiver Support Program in his appeal. (VISN Appeal at 2, 3). On September 16, 2020, William Sivley, a DVA Program Manager, emailed counsel for the Snowdens and informed her that the issue was "more of a contracting/availability issue," and that while DVA concurred that Alfred "should have the care," they were having difficulty sourcing a provider. (Sept. 16, 2020 Email from Sivley at 2, ECF No. 1-4). DVA did not issue a final decision regarding Alfred's appeal for several months. (Compl. ¶ 20). Having received no response from DVA or VISN 5, the Snowdens filed this lawsuit on October 9, 2020. (ECF No. 1).

Following the filing of this action, VISN 5 Director Robert Walton sent Alfred a letter on December 4, 2020, notifying him that he would be readmitted into the HHAP. (Taylor Decl. ¶ 16; Dec. 4, 2020 Letter from Robert Walton ["VISN Decision"] at 2, ECF No. 16-5). In the letter, Walton explained that the reference to the Caregiver Support Program in Alfred's appeal "may have led to some confusion" in responding to the appeal. (VISN Decision at 2). Taylor echoed this sentiment, noting that the incorrect reference to the Caregiver Support Program in the February 21 letter "caus[ed] confusion as to what

---

[4] As DVA explains, its health care system is divided into geographic regions called Veterans Integrated Service Networks, or VISNs, each of which is responsible for overseeing medical facilities within that defined region. (Def.'s Mem. Supp. Mot. Dismiss Alt. Summ. J. at 2 n.1, ECF No. 11-1). The Snowdens reside within the Capitol Health Care Network region, i.e., VISN 5.

issue was on appeal, which most likely contributed to the delay in the VISN issuing a decision on Mr. Snowden's appeal." (Taylor Decl. ¶ 14). On or about February 5, 2021, DVA readmitted Alfred to the HHP and assigned a home health aide agency to provide services. (Taylor Decl. ¶ 17). Judith refused to accept services from the first home health agency assigned, so DVA assigned another agency on March 4, 2021. (Id.). Alfred has been receiving services since that time. (Id.; Judith Aff. ¶ 22).

## B. Procedural History

The Snowdens filed this lawsuit against DVA and several DVA employees, including Crystal Taylor, William Sivley, Robert Walton, Raymond Chung, VISN 5 Chief Medical Officer, and Robert Wilkie, then-United States Secretary of Veterans Affairs (together, the "Individual Defendants"),[5] on October 9, 2020. (ECF No. 1). The Snowdens' two-count Complaint requests a writ of mandamus pursuant to 28 U.S.C. § 1651 (Count I) and alleges violation of the Snowdens' due process rights pursuant to 42 U.S.C. § 1983 (Count II).[6] (Id. ¶¶ 21–31). Because the Snowdens have since received the relief they sought in Count I, they agree with DVA that "Count I is moot and may be dismissed." (Pls.' Reply Def.'s Mot. Dismiss Alt. Summ. J. ["Opp'n"] at 4, ECF No. 16).[7] Accordingly, only

[5] The Court will direct the Clerk to update the docket to replace Robert Wilkie with the current Secretary of Veterans Affairs, Denis McDonough. See Fed.R.Civ.P. 25(d).

[6] The Complaint is somewhat confusing in that its "Request for Writ of Mandamus" is not described as a "count," and the Section 1983 claim is described as "Count I." (Compl. at 5, 6). For clarity, and due to the order in which the requests for relief are presented in the Complaint, the Court will refer to the count seeking a writ of mandamus as "Count I" and the Section 1983 claim as "Count II."

[7] The count will be dismissed with prejudice. See Kitchings v. Shelton, No. PWG-17-882, 2018 WL 398285, at *6 (D.Md. Jan. 12, 2018) ("Any abandoned claims are subject to dismissal with prejudice." (citations omitted)).

Count II remains. Although the Snowdens' request for relief is not clear, they appear to at least seek "arrearage for private home-care borne by the Snowden's since May 2019." (Compl. at 7).

On March 23, 2021, DVA filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 11). The Snowdens filed an Opposition on April 29, 2021. (ECF No. 16). DVA filed a Reply on June 10, 2021. (ECF No. 20). The Individual Defendants did not file a motion to dismiss.

## II. DISCUSSION

### A. Standard of Review

#### 1. Conversion

DVA styles its Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner implicates the Court's discretion under Rule 12(d)[.]" Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020) (citation omitted). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and "a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331, 342 (D.Md.

2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied. The Snowdens were on notice that the Court might resolve the Motion under Rule 56 because DVA styled its Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. The

Snowdens filed an Opposition but did not include a request for more time to conduct discovery. (See ECF No. 16). The Court will therefore consider documents outside of the Snowdens' Complaint in resolving DVA's Motion and treat the Motion as one for summary judgment.

**2. Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere

speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

## B. Analysis

### 1. Basis for Constitutional Claim

The Snowdens point to 42 U.S.C. § 1983 as the basis for their remaining claim against Defendants. However, as DVA correctly notes, "Section 1983 applies only to state officers acting under color of state law, and not to federal officers, and has no application to the federal government or its officers." Curtis v. Pracht, 202 F.Supp.2d 406, 418 (D.Md. 2002) (internal quotation marks and citations omitted); see also Annappareddy v. Pascale,

996 F.3d 120, 132–33 (4th Cir. 2021) (noting that neither Section 1983 nor any other statute creates a cause of action against federal officials for violating the Constitution). There is, however, an "implied cause of action first recognized in [Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971)], allowing suits for damages against federal officers alleged to have violated a citizen's rights under the Constitution." Annappareddy, 996 F.3d at 133 (internal quotation marks and citation omitted). Accordingly, the Court will liberally construe the Complaint as asserting a Bivens action for violating the Snowdens' constitutionally protected due process rights.

**2. Viability of Claim Against DVA**

As set forth above, the Supreme Court's Bivens decision identified an implied cause of action against federal officers for violations of the Constitution. Bivens did not, however, create a cause of action against a federal agency. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 69 (2001) ("'[T]he purpose of Bivens is to deter the officer,' not the agency." (quoting F.D.I.C. v. Meyer, 510 U.S. 471, 485 (1994))); Mackall v. United States Dep't of Def., No. RDB-17-0774, 2017 WL 5564665, at *4 (D.Md. Nov. 20, 2017) ("While Bivens holds that sovereign immunity does not shield federal officers from liability for constitutional violations, the Court has not extended this waiver to federal agencies."), aff'd, 721 F.App'x 303 (4th Cir. 2018). The Snowdens have not directed the Court to any other basis to conclude that the federal government has waived its sovereign immunity as to this claim. Accordingly, the Snowdens' Bivens claim against DVA will be dismissed.

**3. Jurisdiction Over Claims Against Individual Defendants**

"[F]ederal courts are courts of limited jurisdiction." Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 432 (4th Cir. 2014) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). Although only DVA has raised the question of subject-matter jurisdiction, "a federal court has an independent obligation to assess" its power to hear a case. Constantine v. Rectors & Visitors George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005). If a court determines that it does not have subject matter jurisdiction over a dispute, "the court must dismiss the action." Fed.R.Civ.P. 12(h)(3). Thus, even in the absence of a motion from Individual Defendants, the Court must consider whether it has jurisdiction over the Snowdens' claims against them.

DVA asserts that pursuant to the Veterans Judicial Review Act, Pub. L. No. 100-687, 102 Stat. 4105 (1998) ("VJRA"), this Court lacks jurisdiction over the Snowdens' claim. "Through the VJRA, Congress enacted a specialized review process for the adjudication of veterans' benefits claims." Hairston v. DVA, 841 F.App'x 565, 569 (4th Cir. 2021). As the Fourth Circuit explained:

> The Secretary of the [DVA], as mandated by statute, decides "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans." 38 U.S.C. § 511(a). Subject to some exceptions not relevant here, see id. § 511(b), such decisions by the Secretary may only be reviewed on appeal by the Board of Veterans' Appeals, a [DVA] administrative body, id. § 7104(a), and then by the United States Court of Appeals for Veterans Claims, an Article I court with "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals," id. § 7252(a). Decisions by the Court of Appeals for Veterans Claims may be appealed only to the Federal Circuit. Id. § 7292(a), (c).

> Congress made clear that this specialized review process is also an exclusive one. Beyond this narrow route, federal courts generally are barred from hearing challenges to benefits determinations. The Secretary's decisions on "all questions of law and fact" relevant to "the provision of benefits" are "final and conclusive and may not be reviewed by any other official or by any court" beyond the statutorily prescribed appeals process. Id. § 511(a). The upshot, as we have explained, is that federal district courts lack jurisdiction to review [DVA] decisions that "affect the provision of the benefits awarded by the [DVA]." Butler v. United States, 702 F.3d 749, 753 (4th Cir. 2012) (citation omitted).

Id. at 569–70.

The Snowdens first argue that the HHAP does not constitute a "benefit" under the VJRA and therefore is not subject to the exclusive review process set forth in Hairston. The Snowdens' argument rests on a misapprehension of the program under which Alfred was and is entitled to and receiving benefits. In their Opposition, the Snowdens assert that Alfred received benefits under the Caregiver Support Program, 38 U.S.C. § 1720G, and the Veterans Community Care Program, 38 U.S.C. § 1703. Determination of benefits under these programs, the Snowdens argue, are medical determinations and therefore outside the VJRA review process. See Tapia v. United States, 146 Fed. Cl. 114, 133 (2019) (finding that challenges pursuant to 38 U.S.C. § 1720G were "medical determinations" and therefore were not "adjudicative matters" subject to the VJRA review process). But Alfred does not receive benefits under those programs. (See May 8 Letter at 2; VISN Decision at 2). As such, whether services conferred under these other programs constitute "benefits" is immaterial.

As set forth above, Alfred receives home health aide services pursuant to the HHAP, 38 U.S.C. §§ 1717(a), 1720C(a). Under 38 U.S.C. § 1717, the DVA "may furnish such home health services as the [DVA] finds to be necessary or appropriate for the effective and economical treatment of the veteran." Under 38 U.S.C. § 1720C(a), the DVA "may furnish medical, rehabilitative, and health-related services in noninstitutional settings for veterans who are eligible under this chapter for, and are in need of, nursing home care." Collectively, these statutes authorize the DVA to administer the HHAP services it provides for veterans like Alfred. DVA regulations define a "benefit" for the purpose of the VJRA as "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the [DVA] pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e). Thus, pursuant to DVA regulations, the "services" Alfred receives via the HHAP are "benefits" for the purposes of the VJRA. Accordingly, the VJRA divests this Court of jurisdiction to review the decisions of DVA or its officers concerning those benefits.[8]

The Snowdens next argue that their due process challenge does not seek to challenge the provision of benefits, which district courts are prohibited to review under the VJRA,

---

[8] The Court further notes that even if the Snowdens were correct that Alfred received his benefits pursuant to the Caregiver Support Program, a recent decision by the Court of Appeals for Veterans Claims held that the VJRA review process did extend to agency actions arising under that program. See Beaudette v. McDonough, 34 Vet.App. 95, 102–03 (2021). Indeed, Westlaw searches for "38 U.S.C. § 1720G" and "38 U.S.C. § 1703" reveal not one decision by a court other than the United States Court of Appeals for Veterans Claims, the United States Court of Federal Claims, or the United States Court of Appeals for the Federal Circuit. Thus, while there remains no genuine dispute of fact regarding whether Alfred receives his benefits through the HHAP, even if such a dispute did exist, this Court would still lack jurisdiction over this action.

but rather the deficient process through which the denial of benefits was effectuated. In other words, the Snowdens challenge not the temporary denial of benefits to Alfred, but rather Defendants' failure to adhere to DVA policy and timely respond to Alfred's appeal.

Although the Fourth Circuit has yet to expressly decide whether such a claim is reviewable, see Hairston, 841 F.App'x at 571 n.3, other circuit courts to review the question have found that the VJRA still precludes district court jurisdiction. See, e.g., Veterans for Common Sense v. Shinseki, 678 F.3d 1013, 1021 (9th Cir. 2012). As the Ninth Circuit noted, "Congress indicated that the Veterans Court's authority would extend to 'all questions involving benefits under laws administered by the [DVA]. This would include factual, legal, and constitutional questions.'" Id. at 1021 (quoting H.R. Rep. No. 100-963, at 5 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5786). This exclusive grant of authority to the Veterans Court includes the power to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2). "[D]ecisions of the Veterans Court are reviewed exclusively by the Federal Circuit, which 'shall decide all relevant questions of law, including interpreting constitutional and statutory provisions.'" Veterans for Common Sense, 678 F.3d at 1021 (quoting 38 U.S.C. § 7292(d)(1)); see also Allen v. Shinseki, No. WDQ-12-0269, 2012 WL 6111835, at *5 n.22 (D.Md. Dec. 6, 2012) ("[C]onstitutional questions are no less questions of law committed to the Secretary's discretion under § 511(a) than those involving the application of the statutes governing benefit determinations." (internal quotation marks omitted)).

The Court finds the reasoning of the Ninth Circuit persuasive. The VJRA has divested this Court of jurisdiction over all relevant questions of law relating to benefits

administered by the DVA, including the process by which those benefits are administered. This includes the Snowdens' constitutional claims against all Defendants. The Court therefore lacks subject-matter jurisdiction over those claims. Finding no remaining basis for this Court's jurisdiction, the Court is compelled to dismiss the Complaint.

## III. CONCLUSION

For the foregoing reasons, the Court will grant DVA's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 11), which it construes as a motion for summary judgment. A separate Order follows.

Entered this 8th day of October, 2021.

/s/
George L. Russell, III
United States District Judge